**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JAY D. GOULD,<br>Plaintiff,<br>v.<br>INTERFACE, INC.,<br>Defendant. | Civil Action No.<br>1:20-cv-00695-SDG |

**OPINION AND ORDER**

This matter is before the Court on United States Magistrate Judge Christopher C. Bly's Final Report & Recommendation (the R&R) [ECF 195], recommending that Defendant Interface, Inc.'s (Interface) summary judgment motion [ECF 134] be granted. Also before the Court are Interface's objections [ECF 197] and Plaintiff Jay D. Gould's objections [ECF 198] to the R&R. After conducting a *de novo* review of those portions of the R&R to which the parties object and reviewing the remainder of the R&R for plain error, the Court **SUSTAINS** Interface's objections, **OVERRULES** Gould's objections, and otherwise **ADOPTS** the R&R [ECF 195] as the Order of this Court.

## I. Background

Gould has brought claims against his former employer, Interface, for retaliatory discharge in violation of Title VII and breach of contract, both related to his termination after he allegedly opposed a sexist hiring practice, but also after

he purportedly caused multiple drunken scenes at a work event. A thorough recitation of this case's M-rated details is included in the R&R, and it is unnecessary to repeat them here. Rather, the Court notes the most relevant facts where necessary, simultaneous with its analysis of the parties' objections to the R&R. Where applicable, the Court notes which facts are disputed.

## II. Legal Standard

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

## III. Discussion

### A. Title VII Retaliation

Retaliation claims based on circumstantial evidence, such as those asserted by Gould, are analyzed under the three-part *McDonnell Dou*glas burden-shifting framework. *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). First,

the plaintiff must establish a *prima facie* case of retaliation. Second, if the plaintiff successfully establishes a *prima facie* case of retaliation, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision. Third, assuming the defendant makes the requisite showing, the burden shifts back to the plaintiff to establish that the reason offered by the defendant "'was not the real basis for the decision, but a pretext for discrimination.'" *Id.* (quoting *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 806 (11th Cir. 1995)).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Id.* at 1325. The parties only dispute, and the Court will only address, the first and third elements. As the Court agrees with Judge Bly's conclusion that Gould failed to establish his *prima facie* case of retaliation, it need not apply the burden shifting framework.

#### *i.* **Statutorily Protected Activity**

##### *a.* **The R&R's Findings**

Gould identifies three instances of alleged statutorily protected conduct: (1) opposing Hendrix's alleged statement regarding hiring practices for secretaries; (2) defending his wife against, and therefore opposing, Hendrix's supposed

advances; and (3) filing the EEOC charge and this lawsuit, which he alleges caused the Interface Board's Compensation Committee to strip him of his bonus and long-term incentives.[1] Judge Bly found that Gould sufficiently established that he engaged in a statutorily protected activity with respect to the first instance, his opposition to Hendrix's "unquestionably gender-based" comments regarding secretarial hiring practices,[2] but that Gould did not adequately plead the latter two instances of allegedly protected conduct in his Amended Complaint.[3]

***b.*** **Interface's Objections**

Interface objects to the R&R's "protected activity" analysis regarding Gould's purported opposition to Hendrix's alleged sexist hiring commentary.[4] First, Interface argues that "Gould did not establish an objectively reasonable belief that discrimination took place."[5] Specifically, Interface takes issue with Gould's inability to identify a single instance of discriminatory hiring, and notes that Gould, as CEO of Interface, controlled hiring policy.[6] Second, Interface objects

---

1 ECF 167, at 11–16.

2 ECF 195, at 36.

3 *Id.* at 32.

4 ECF 197, at 2.

5 *Id.*

6 *Id.* at 3.

to the R&R on the basis that Gould did not "prove[ ] that he actually 'opposed' the alleged practice."[7] It further argues that Gould must have "flag[ged] the practice as unlawful," which he did not do, to evade summary judgment.[8] In response, Gould insists that the R&R's analysis on this point is correct.[9] Interface's objections are well taken.

Gould failed to put forth any evidence that he objectively believed that gender-based discriminatory hiring practices were actually happening at Interface. Gould's own recount of Hendrix's statement about hiring secretaries during their lunch conversation in 2020, even assuming it to be true, only implies that there may have been discriminatory practices in years past. Specifically, Gould testified as follows: "My understanding was and I believe [Hendrix's] exact words were [']Ray [Anderson, (Interface's founder)] and I *used to have* the right way to hire a secretary.[']"[10] Gould has not set forth an iota of evidence that Hendrix (or anyone else with a potentially discriminatory belief) was in any way engaged in actually hiring secretaries for Interface at the time of their discussion

---

7 *Id.*

8 *Id.*

9 ECF 200, at 1–2 (quoting ECF 195, at 34).

10 ECF 151-1, at 226 (emphasis supplied).

in 2020. The Court has not found a single case in which opposition to a *past* unlawful hiring practice constitutes a protected act under Title VII, and Gould provides none.

Nor has Gould put forth any evidence that would create a disputed issue of material fact concerning whether he opposed the alleged unlawful hiring practice. "A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010). Even assuming Gould's version of events to be true, *i.e.,* that he immediately responded to Hendrix by saying, "that's not how we hire,"[11] this does not constitute protected opposition to an unlawful hiring practice as a matter of law. If anything, it reinforces the point that Gould, as Interface's CEO, was in a good position to know whether any discriminatory hiring practice was, in fact, occurring at present-day Interface, and Gould denied that it was.

Stated differently, there was no "opposition" because, as far as Gould knew, there was nothing to actually oppose: "[Gould] testified that he did not know of any secretary that was ever hired using that criteria, and he does not know what

---

[11] ECF 181, ¶ 10.

criteria Hendrix used to hire his assistant."[12] In fact, Gould admitted that he never lodged a complaint about Hendrix's comment and did not know whether anyone else on the Interface Board was ever made aware of it.[13] That's not statutorily protected opposition; it's an after-the-fact attempt to manufacture protected activity out of whole cloth. Interface's objection is sustained, and Gould's retaliation claim, for this additional reason, fails as a matter of law.

### *c.* Gould's Objections

Gould, for his part, objects to Judge Bly's statutorily protected activity analysis as well, arguing that Gould's opposition to the alleged harassment of his wife and his filing of an EEOC charge were properly pleaded as additional protected activities in his Amended Complaint.[14] In Gould's view, "the R&R applies an inappropriately restrictive reading of [his] Amended Complaint, which is otherwise to be interpreted in a liberal manner."[15] More specifically, Gould avers that all three instances of alleged protected activity are incorporated in his sole

---

12 ECF 195, at 32-33.

13 ECF 151-1, at 228.

14 ECF 198, at 11.

15 *Id.* at 12.

retaliation claim as pled.[16] Interface responds that the R&R's analysis is correct, and that Gould's two additional alleged instances of protected activity cannot fairly be read into his retaliation claim at the summary judgment stage.[17] Further, Interface points out that any alleged retaliation concerning Gould's pay (stemming from his EEOC charge) is necessarily a different protected activity leading to a different adverse employment action.[18]

Following a *de novo* review of the R&R and consideration of the parties' arguments, the Court overrules Gould's objection. First, although the Amended Complaint has been construed liberally, the Court is not persuaded that Gould's Amended Complaint must be construed as liberally as he would like. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (cleaned up) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam)) ("Despite the liberal pleading standard for civil complaints, plaintiffs may not raise new claims at the summary judgment stage."). True, as Gould notes,

---

16 *Id.* at 14–15 (citing *Hodges v. Sch. Bd. of Orange Cnty.*, No. 6:11-cv-135-Orl-36GJK, 2012 WL 5051923, at *10–12 (M.D. Fla. Oct. 18, 2012); *Cockrell v. Peterson*, No. 1:06-CV-600-ECS, 2008 U.S. Dist. LEXIS 129769, at *7–9 (N.D. Ga. May 28, 2008)).

17 ECF 199, at 16-17.

18 *Id.* at 17 (citing *Breeding v. Integrated Behav. Health, Inc.*, No. 2:20-CV-00551-RDP, 2022 WL 49184, at *9 (N.D. Ala. Jan. 5, 2022)).

his retaliation claim incorporates all preceding paragraphs by reference, including those that detail Hendrix's alleged behavior toward Gould's wife and Gould's filing of an EEOC charge.[19] However, as Interface persuasively points out, Gould offered the allegation concerning Hendrix's harassment of Gould's wife "only as a supposed example of [ ] Hendrix's alleged issues with intoxication."[20] This is an easy conclusion to draw when that allegation appears in Gould's Amended Complaint under the heading, "The Chair [Hendrix] and Others Were Intoxicated at Company Events [I]ncluding the 2019 Sales Meeting."[21] Further, the paragraph including this information does not allege or suggest that Gould opposed Hendrix's behavior toward his wife, who is not even an employee of Interface.[22] In fact, the only allegation is that Gould's wife alone rebuffed Hendrix's

---

19 ECF 4, ¶ 73.

20 ECF 199, at 16.

21 ECF 4, ¶ 59.

22 *Id.* As Judge Bly correctly noted, even if Gould had properly pled his opposition to Hendrix's behavior towards his wife, this does not constitute an employment practice by Interface because Ms. Gould is not an Interface employee. ECF 195 at 35 n.10. Therefore, any conduct Gould might have taken in opposition cannot constitute a protected activity. *Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 996 (11th Cir. 2020) (rejecting the argument that the plaintiff engaged in protected activity when he objected to the treatment of a third party, and noting that "the relevant individual must work for the employer who allegedly violated Title VII"). Gould's footnote objection to the contrary is overruled. ECF 198, at 16 n.35.

advances.[23] Likewise, Gould's Amended Complaint only alleges that he "timely filed his EEOC administrative charge and received his notice of right to sue"—not that Interface took any retaliatory measure in response to Gould's EEOC charge.[24]

Second, with respect to the alleged retaliation for his EEOC charge, Gould's two authorities are inapposite. Neither case addresses additional *post-termination* adverse employment actions. *Cf. Cockrell v. Preston*, 2008 U.S. Dist. LEXIS 129769, *8 ("Plaintiffs' placement in non-pay status is not factually unrelated to Plaintiffs' existing claims. Plaintiffs argue that their terms were not renewed, in part, *because of* their placement on non-pay status."); *Hodges v. Sch. Bd. of Orange Cnty.*, No. 6:11-cv-135-Orl-36GJK, 2012 WL 5051923 (M.D. Fla. Oct. 18, 2012), *12 (finding prior examples of protected conduct were not precluded for discussion for the first time at summary judgment considering "the Amended Complaint's explicit statement that the examples of retaliation [in it] were not exhaustive").

Interface's principal case demonstrates why this distinction matters. In *Breeding v. Integrated Behavior Health, Inc.*, as in this case, the plaintiff's complaint alleged retaliation on one basis: the plaintiff opposed a discriminatory hiring practice and was subsequently terminated. 2:20-cv-00551, 2022 WL 49184, at *11

---

23 ECF 4, ¶ 59.

24 *Id.* ¶ 13; *see generally id.*

(N.D. Ala. Jan. 5, 2022). In her response to defendant's summary judgment motion, the plaintiff alleged an entirely new claim—that she called the defendant's former CEO *after* her termination, and the defendant retaliated by shortening the plaintiff's termination period and withdrawing her separation offer. *Id.* The *Breeding* court explained that "[w]hile a non-moving party may assert additional facts in support of an existing claim, she cannot invent a wholly new claim in a summary judgment response." *Id.*

Consequently, Gould could have (and perhaps should have) sought leave to amend his operative complaint pursuant to Fed. R. Civ. P. 15(a) to add additional, distinct retaliation claims, but he cannot accomplish this through argument at summary judgment. *Gilmour*, 382 F.3d at 1315 ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."); *Cook*, 557 F. Supp.2d at 1372 (noting that to be precluded, "a new 'claim' does not have to be a new and independent cause of action but merely may be a new, unpled theory of the case").

For these reasons, the Court overrules Gould's objections concerning statutorily protected activity.[25]

### *ii.* Causation

#### *a.* The R&R's Findings

Judge Bly determined that, while Gould established temporal proximity between his alleged opposition to Hendrix's statements about secretarial hiring practices and his termination, Gould did not raise a disputed issue of material fact as to whether the Board was made aware of his supposed opposition to Hendrix.[26] Moreover, Judge Bly found that Gould did not offer evidence to suggest Hendrix had retaliatory motive, or that his recommendation to terminate Gould and the Board's decision to terminate were based on anything other than the investigation concerning Gould's misconduct.[27]

#### *b.* Gould's Objections

Gould insists that the R&R understates the evidence of a causal link between his opposition to Hendrix's statement regarding secretarial hiring practices and Gould's termination.[28] Further, in Gould's view, the R&R dispenses with

---

25 ECF 195, at 30; *see also* ECF 4, ¶¶ 73–77.

26 ECF 195, at 38.

27 *Id.*

28 *See generally* ECF 198, at 16–25.

"established precedent directing that evidence must be viewed in a light most favorable to [the p]laintiff" in its conclusion that the Board had no retaliatory animus "in launching an investigation into [Gould] just one day after his protected activity."[29]

### *1.* The Board's Knowledge and Animus

Gould argues that the R&R dismissed evidence that Board member Chris Kennedy was aware of Gould's purportedly protected comments to Hendrix, and impermissibly viewed the evidence in the light most favorable to Interface.[30] First, as the R&R points out, "Kennedy did *not* testify that he was aware that [Gould] allegedly opposed the practice in [his] conversation with Hendrix—he simply said that he first heard of the story about the alleged criteria during the course of the investigation."[31] Indeed, Gould does not proffer and Kennedy did not indicate at what point in the investigation Kennedy learned about Hendrix's "story," that Kennedy ever understood the "story" to have been portrayed as an Interface hiring practice, or, most importantly, that Kennedy was ever aware of Gould's alleged opposition to such a practice. The Court declines Gould's invitation to

---

29 *Id.* at 17–18.

30 *Id.* at 18.

31 ECF 195, at 38; *see also* ECF 142-1, at 249.

speculate regarding Kennedy's personal knowledge when the record on this point is undisputed. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.").

Second, even if Kennedy had knowledge of Gould's alleged opposition to Hendrix, Gould's focus on Kennedy (or any one Board member, for that matter) is misplaced. As Interface explains, "the Board voted unanimously to terminate Mr. Gould's employment."[32] The Board acts as a body, and was the sole decisionmaker in this case; it hired Gould, it fired Gould, and it stripped Gould of his benefits. No individual Board member has the authority to so act. In fixating on Kennedy and Hendrix, however, Gould "failed to present sufficient evidence that . . . [the Board] was aware of [his] protected conduct." *Clover v. Total Sys. Servs., Inc.* 176 F.3d 1346, 1356 (11th Cir. 1999) (reversing the district court's denial of summary judgment on similar grounds). It is not, as Gould editorializes, that Judge Bly found that "no member of the Board was aware of [Gould's] protected activity."[33] Rather, Judge Bly found "there is simply no evidence that the Board (as opposed to Hendrix [or Kennedy], who [were each] only one member) was . . . aware of [Gould's]

---

32 ECF 199, at 21.

33 ECF 198, at 18.

opposition."[34] The Court agrees and adopts the R&R's reasoning on this point, including its succinct explanation of why summary judgment is warranted:

> The overriding problem with [Gould's] argument (and really his claim as a whole) is that he fails to present any evidence of *discrimination*. It is not enough to simply show that the [Board's] decision to fire [Gould] was a poor one . . . . [Gould] has to show that the Board's decision to fire him was infected by discriminatory intent.[35]

#### 2. Hendrix's Retaliatory Animus and Temporal Proximity

Gould also argues that the R&R fails to address how the "extraordinarily close temporal proximity between [Gould's alleged] protected activity and Hendrix's push for the investigation and termination of Plaintiff is not itself valid circumstantial evidence of Hendrix's retaliatory animus."[36] As Judge Bly rightly noted, however, temporal proximity alone does not raise a dispute of material fact regarding Hendrix's alleged retaliatory animus.[37] Indeed, Gould has not adduced supporting facts beyond the temporal proximity of the protected conduct and the adverse employment action, and has not offered facts which show that his

---

34 ECF 195, at 43.

35 *Id.* (citing *Lewis v. City of Union City*, 934 f.3d 1169, 1187 (11th Cir. 2019)).

36 ECF 198, at 20.

37 ECF 195, at 45.

statements to Hendrix were the but-for cause of his termination. *See Duncan v. Alabama*, 734 F. App'x 637, 641 (11th Cir. 2018). Without more, the Court cannot credit Gould's "inference" at this summary judgment stage, which is unmoored from the undisputed record evidence.

Moreover, as Interface notes, the causal chain is severed in any event by Gould's actions on the evening of January 14, 2020, especially in light of the February 2019 Memorandum, which expressly warned Gould not to abuse alcohol at company events or disparage his employees. *Cf. Hawkins v. AirTran Airways, Inc.*, 237 F. App'x 513, 520–21 (11th Cir. 2007) ("This intervening act of misconduct, which was plainly in violation of [company policy], severed the causal connection (if any) between [the plaintiff's] initial [protected act] and [the defendant's] decision to terminate [his] employment. Thus, we agree with both the magistrate judge and the district court that causation cannot be inferred . . . . [T]he evidence establishes that [the plaintiff's] flagrant act of misconduct broke the causal chain.").

#### *3.* The Investigation and "Cat's Paw" Causation

Gould also takes aim at the investigation performed by an outside law firm, King & Spalding, LLP (K&S), insisting that Hendrix's and Kennedy's alleged bias permeated K&S's investigation and, in turn, influenced the Board to terminate

Gould.[38] The Court already dispensed with Gould's lack of disputed evidence regarding Hendrix's and Kennedy's animus, and that analysis will not be repeated. Instead, the Court focuses on Gould's contention that "the R&R does not acknowledge other evidence in the record establishing Hendrix's influence" on K&S's investigation.[39] The smoking guns to which Gould refers appear to be "that at least one witness was driven and escorted to King & Spalding's office by a[n] [Interface] senior executive," and that Hendrix instructed K&S to notify the Board of the allegations against Gould before it completed the investigation.[40] In response, Interface avers that Gould has failed to show that Hendrix "guid[ed] the scope of the King & Spalding investigation in any fashion."[41] The Court agrees with Interface, and adopts the R&R's reasoning.

First, as Interface notes, Gould "cites no authority that [an investigation] cannot continue after sufficient evidence has been gathered to support immediate termination."[42] It strikes the Court that the fact of K&S's continued investigation following Gould's termination does not mean much, absent evidence that, before

---

38 ECF 198, at 21–22.

39 *Id.* at 23.

40 *Id.*

41 ECF 199, at 22 (citing ECF 181, ¶ 50).

42 *Id.* at 22–23.

reporting its findings to the Board, the firm failed to interview the witnesses most vital to the Board's for-cause determination. *Cf. Blackman v. City of Opa Locka*, No. 10-23985-Civ-WILLIAMS, 2011 WL 13223512, at *3 (S.D. Fla. Nov. 30, 2011) (holding summary judgment was precluded where the plaintiffs offered evidence that they, their supervisors, and the complainants had not been interviewed). It is undisputed that K&S interviewed 12 witnesses, including Gould and the account executive who lodged a complaint against him, before it delivered its preliminary findings to the Board.

Second, "[t]he fact that Hendrix and Kennedy played a role in selecting [K&S] to conduct an investigation falls far short of showing that they influenced the investigation."[43] That K&S acted nimbly in accordance with Kennedy's desire for an expeditious determination means neither that the firm performed a slipshod job, nor that Kennedy (or anyone else) exercised undue influence over the investigation's scope.

Finally, that an Interface executive gave a witness a ride to K&S's office, without more, does not mean Interface coerced the witness to testify one way or

---

43 ECF 195, at 41.

another. The Court will not infer the investigation was a sham from immaterial facts, and the summary judgment standard does not require it to do so.

So, the Court need not apply the "cat's paw" framework as urged by Gould. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) ("[C]ausation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus."). The R&R is adopted on this point.

At bottom, Gould has failed to establish a disputed issue of material fact that Hendrix, Kennedy, or anyone else held an impermissible retaliatory animus, which was leveraged to influence the Board's decision to terminate Gould. Accordingly, the Court overrules Gould's objections concerning causation.

**B. Leave to Amend**

In a footnote in his objections, Gould requests leave to amend his operative complaint to add another claim for retaliation based on the temporal proximity

between his filing of the EEOC charge that predicated this lawsuit and the Board's resolution stripping his benefits.[44] That request is denied.

In this Circuit, a party seeking to amend a pleading must move to do so under Federal Rule of Civil Procedure 15(a) and "must either attach a copy of the proposed amendment to the motion or set forth the substance thereof" because "a plaintiff 'should not be allowed to amend [his] complaint without showing how the complaint could be amended to save the meritless claim.'" *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006) (quoting *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999)). *See also* LR 7.1(A)(1), NDGa ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority.").

Gould did not separately move for leave to amend the Complaint, nor did he attach an amended pleading or describe how the amended pleading would cure the deficiencies in his Complaint. And while he argues that "key facts related to such a claim were not uncovered until late in the discovery period," he knew before he filed this lawsuit (and at all times since) that he had filed an EEOC charge and his benefits were stripped.[45] To claim otherwise is disingenuous and belies his

---

44 ECF 198, at 16 n.36.

45 *Id.*

argument that his Amended Complaint already alleges this theory of retaliation. Furthermore, "[i]t is well-settled that a plaintiff may not amend [his] complaint by raising arguments for the first time in [his] response." *Allstate Ins. Co. v. ADT, LLC*, No. 1:15-cv-517-WSD, 2015 WL 5737371, at *7 (N.D. Ga. Sept. 30, 2015) (citing *Huls v. Llabona*, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium)). Gould's request to amend is denied.

**C. Gould's Remaining Objections**

Gould's remaining objections are lodged on pages that far exceed those permitted under the local rules, and Gould did not seek leave to exceed the page limit. *See* LR 7.1(D), NDGa. Gould's counsel even signed and attached a Rule 7.1 Certificate of Compliance to his objections, acknowledging his awareness of the rule. Thus, as Interface correctly points out, the Court would be well within its right to disregard Gould's remaining objections on procedural grounds.

Nevertheless, the Court has considered Gould's remaining objections and undertaken a *de novo* review of the entire R&R, including Judge Bly's analysis and conclusions concerning Gould's "convincing mosaic" argument and breach of contract claim. The Court overrules Gould's objections and adopts the R&R as the Order of this Court in all remaining respects.

## IV. Conclusion

The Court **SUSTAINS** Interface's objections [ECF 197], **OVERRULES** Gould's objections [ECF 198], and otherwise **ADOPTS** the R&R [ECF 195] as the Order of this Court. Interface's summary judgment motion [ECF 134] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment against Plaintiff Gould and close this case.

**SO ORDERED** this 31st day of March, 2022.

Steven D. Grimberg
United States District Court Judge